```
              UNITED STATES COURT OF APPEALS
                 FOR THE EIGHTH CIRCUIT
                 _____

                     No. 96-1960
                 _____


VIETCHAU NGUYEN,                      *
                                      *
        Plaintiff-Appellant,          *
                                      *
        v.                            *
                                      *       Appeal from the United
States
UNITED STATES OF AMERICA,             *       District Court for the
District
                                      *       of Minnesota
        Defendant-Appellee.           *
                                      *
```

Submitted: November 19, 1996

Filed: May 19, 1997

Before BEAM, FRIEDMAN[1], and LOKEN, Circuit Judges.

FRIEDMAN, Circuit Judge.

The United States District Court for the District of Minnesota[2] denied the appellant Nguyen's motion to vacate his conviction and sentence following his guilty plea. Nguyen contended that his plea was involuntary. The district court denied the motion without an evidentiary hearing. We affirm.

---

[1] DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

[2] The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

I.

A.  Nguyen, born and raised in Vietnam, came to the United States where he earned bachelor's and master's degrees in civil engineering at the University of Minnesota and a Doctorate in engineering at Princeton University.  He became president of an environmental consulting firm called Earth, Water and Air, Incorporated ("the Company"), of which a close friend became vice president.  The Company served various governmental entities and others.

One of its clients was the Yakima Indian Nation ("Yakima"), to which the United States Department of Energy had made a grant to study the effects of locating a nuclear waste disposal facility on Yakima land.  As Nguyen acknowledges in his brief, Yakima hired the Company to advise it on the environmental effects of thus locating the facility.  Although Yakima hired the Company, the government (specifically, the Department of Energy) provided grants to the Yakima to pay for the Company's consulting services.

On September 21, 1990 Nguyen, the Company's vice president and the Company were indicted in the United States District Court for the District of Minnesota in 25 counts charging wire and mail fraud, false statements to the government, transportation of stolen goods, and conspiracy to defraud the United States.  A number of the counts charged the defendants with submitting false vouchers to the Yakima that substantially overstated the amounts due the Company because the vouchers were based upon an overstatement of the number of hours Company employees had worked for the Yakima.

Nguyen, represented by counsel, entered into a written plea agreement in which he agreed to plead guilty to one count of the indictment (count IX) charging mail fraud and to a one count information charging conspiracy to defraud the United States, and the government agreed to dismiss the remaining counts of the indictment against him.  The plea agreement also stated that nothing therein "will prevent the recovery or attempted

2

recovery of restitution or penalties through appropriate civil proceedings." The conduct charged in count IX occurred before the effective date of the United States Sentencing Guidelines.

After an extensive hearing on November 30, 1990, the district court[3] held that the plea was "a completely free and voluntary and knowing one" and accepted it. At the hearing, at which Nguyen's counsel was present, the prosecutor read the plea agreement, and Nguyen stated that that was the agreement he had entered and those were the terms to which he had agreed.

In sworn testimony and by yes or no answers in response to questions by the court, Nguyen stated: (1) that he "had plenty of opportunity to discuss these charges with [his] attorney, to discuss with him [his] possible defenses at trial, to discuss [his] other rights, and to discuss the idea of pleading guilty"; (2) that he was "satisfied with the representation that [he had] received from [his] attorney" and that he "believe[d]" his counsel has "been a good lawyer, as far as [he is] concerned"; (3) that no "force" or "threats" have "been used with or against [him] to get [him] to come into court this morning and plead guilty" and that no "promises [had] been made to [him] of any kind, other than what's been stated in this plea agreement."

In response to questions by his counsel, Nguyen (still under oath) stated in yes or no answers that, with respect to the contract involved in count IX, which had been signed by the predecessor president of the Company, he was "aware" that the "application forms" submitted to the government "were false in a number of ways and still were submitted" and were "false in their representations as to the experience of certain of the employees which were listed on those forms," and he added that "the experience was not from our EWA company," and acknowledged that their experience was "misrepresented"; that "[t]he

---

[3]The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

3

application also overstated the number of employees which EWA had at the time"; that "during the course of work performed under this contract in 1986 and 1987, there were also some hours billed to the COE [Corps of Engineers] which were hours for which work actually had not been performed"; that in 1985 and 1986 there were "employees who charged time which they had worked on other contracts independent of the YIN [Yakima Indian Nation] contract to the YIN contract" and that he was "aware" that two employees had "charge[d]" work to the Yakima contract that they had not done under that contract.

In connection with his yes or no answers to questions by his counsel, Nguyen volunteered some incriminating statements. In stating that work had been done "on the so-called Defense Waste Project," Nguyen stated: "we know that it was not authorized by the U.S. Department of Energy, and we billed it to the Yakima Indian Nation without the DOE authorization, sir." He also stated that he had "order[ed]" an employee "to provide quality assurance and review some of our work. And I know that it was not authorized by the U.S. Department of Energy, and I did charge that time to the contract, sir."

Nguyen then stated, in response to a question by the court, that his "answers to" "each questions [sic] that's been asked of you here this morning" have been "true and correct."

On April 9, 1991, Nguyen was given concurrent sentences of thirty-three months imprisonment on the two counts of which he was convicted. Almost four months later, on August 5, 1991, he moved under Rule 35 of the Federal Rules of Criminal Procedure for a reduction of sentence, which the district court denied.

B. On August 23, 1993, Nguyen moved, pursuant to 28 U.S.C. 2255, to vacate his conviction and sentence on the ground that his guilty plea was coerced and involuntary. This was 32 months after he pleaded guilty on November 30, 1990, 28 months after he had been sentenced, and 24 months after he had moved for a reduction of sentence. Nguyen

4

had been released from confinement and his probation ended on the date he filed the 2255 motion.

A lengthy declaration by Nguyen accompanied the motion, in which he contested most of the statements he had made at the plea hearing. According to Nguyen, his plea was involuntary because (1) he had been denied effective assistance of counsel because his counsel was not adequately prepared for trial, as a result of which he had been coerced and induced to plead guilty; (2) the government had coerced his guilty plea by threatening that otherwise (a) it would file a civil liability suit against him and the Company and (b) it would seek application of the Sentencing Guidelines, with their harsher penalties, and by insisting that his guilty plea be "part of a package" under which his individual co-defendant also would plead guilty; and (3) the government had failed to turn over to him documents it had obtained from the Company under a search warrant, which allegedly would have established his innocence. He asserted that he was innocent of the crimes to which he had pleaded guilty.

The district court denied the motion without a hearing, ruling that Nguyen's "guilty plea was knowing and well-advised." The court ruled that Nguyen "made no showing that he received ineffective assistance [of counsel], or that any alleged ineffectiveness prejudiced his defense." The court rejected his claim that the government had coerced his plea by threatening a civil suit or seeking application of the Sentencing Guidelines. The court stated that Nguyen "may have felt overwhelmed by such information, but he could not have proceeded in a knowing and informed fashion without it." With respect to Nguyen's claim that the government withheld exculpatory documents, the court "determine[d] that the disclosures would not have affected petitioner's decision whether to plead." Finally the court "reject[ed]"

> petitioner's claims of innocence. A review of the transcript of petitioner's change of plea hearing reveals that he volunteered a number of incriminating statements under oath. At no time

5

during or after the plea hearing did petitioner proclaim his innocence. He now claims he lied at the change of plea hearing, but the record shows no indication of falsehood. He would prefer that the Court accept his present, unsworn statements over his previous sworn testimony at his plea hearing. At best, he presents himself as a perjurer at his plea hearing. Faced with this material, the Court credits petitioner's prior sworn statements.

(Although Nguyen had completed his imprisonment and supervised parole prior to the district court's adjudication, "[t]he case is nevertheless not moot, because the federal conviction could have collateral consequences in the future, and [Nguyen] was still in federal custody when he instituted these § 2255 proceedings," Clemmons v. United States, 721 F.2d 235, 237 n.3 (8th Cir. 1983); see also Leonard v. Nix, 55 F.3d 370, 372-73 (8th Cir. 1995), since "[a] probationary term is sufficient custody to confer jurisdiction" under § 2255. United States v. Spawr Optical Research, Inc., 864 F.2d 1467, 1470 (9th Cir. 1988), cert. denied, 493 U.S. 809 (1989). See also Jones v. Cunningham, 371 U.S. 236, 243 (1963); Jones v. Jerrison, 20 F.3d 849, 852 n.2 (8th Cir. 1994).

## II.

"While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a `formidable barrier in any subsequent collateral proceedings.'" Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (citations omitted). Here, as shown in part I, during the plea hearing Nguyen stated that he was satisfied with his lawyer and that no threats or promises had been made to induce him to plead guilty, and admitted his guilt and volunteered statements that confirmed that admission. Nguyen has a heavy burden to overcome those admissions and show that his plea was involuntary. See Blackledge v. Allison, 431 U.S. 63, 72-74 (1977); United States v. Goodman, 590 F.2d 705, 710 (8th Cir.), cert. denied, 440 U.S. 985 (1979).

6

Nguyen sought to vacate his guilty plea on three grounds: (1) that he had been denied effective assistance of counsel, who allegedly was unprepared for trial; (2) that the government had coerced him into agreeing to plead; and (3) that the government had refused to produce documents that allegedly would have established his innocence.

The nature of these allegations shows that, at the time he entered the plea, Nguyen was aware of the bases upon which he now challenges his plea. In that situation one would expect that a defendant promptly would make any challenge he had to the propriety of his plea. Instead, Nguyen waited almost 32 months after his plea and 24 months after he was sentenced before challenging the voluntariness of his plea. This delay sharply contrasts with his filing of his motion to reduce sentence less than four months after sentence was imposed. If Nguyen then believed that he had been denied effective assistance of counsel and coerced into pleading and that his plea was involuntary, it is difficult to understand why he waited to raise that issue until he had been released from confinement. Although Nguyen stated in his § 2255 motion that he had "only recently become aware of the significant inadequacies in [his] prior representation" and "was unaware of any basis to challenge [his] guilty plea," the grounds upon which he seeks to vacate his plea belie those assertions.

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." Voytik, 778 F.2d at 1308. Under that standard, the district court correctly denied Nguyen's motion without a hearing.

A. Nguyen's argument that he received ineffective assistance of counsel is that his lawyer was not adequately prepared for trial because he did not prepare Nguyen to testify, did not hire expert witnesses, and neglected to interview "important witnesses," and that such ineffective assistance "coerced" him to plead guilty. To sustain an ineffective assistance of counsel claim, Nguyen must show that (1) "counsel's representation fell

below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 . Where a guilty plea is challenged under the second prong of the Strickland test the "defendant must show that . . . he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (footnote omitted); see Voytik, 778 F.2d at 1310. In determining whether counsel's conduct was objectively reasonable, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Nguyen's belated claim that his counsel had not represented him effectively is flatly contradicted by his contemporaneous statements at the plea hearing that he was "satisfied with the representation [he had] received" and that he "believed" that his counsel had "been a good lawyer." The record at the plea hearing supported those statements. A letter from his counsel stated that "many hours have been expended in discussing the essential allegations involved in your case, reviewing available business records . . . and investigating the circumstances involved to determine the motivations behind those allegations." Moreover, as the district court pointed out, his counsel negotiated a plea agreement under which he pleaded guilty to two counts of a twenty-five count indictment and was given concurrent sentences of thirty-three months under each count, which "was a good deal and is an objectively prudent plea negotiation." We agree with the district court that Nguyen has not shown that he received ineffective assistance, or that any alleged ineffectiveness prejudiced his defense.

Nguyen further argues that his attorney coerced him into pleading guilty because he told Nguyen that he had no chance of winning, promised that Nguyen would receive six months, or less, of jail time if he pleaded and promised that the government would not file a civil suit if he cooperated by pleading guilty. At the plea hearing, however, Nguyen stated that he understood that the maximum possible sentence was five years

8

imprisonment and a $250,000 fine, and that no promises were made "other than what's been stated in this plea agreement that's been read allowed [sic] here in court."  The plea agreement explicitly reserved the government's right to file a civil suit.  Nguyen's allegations that he was coerced to plead guilty by false promises by his counsel fails to overcome the "strong presumption of verity" that attached to statements made in "open court."  Blackledge, 431 U.S. at 74; see also United States v. Peeler, 738 F.2d 246, 251 (8th Cir.), cert. denied, 469 U.S. 936 (1984).

B.  Nguyen contends that the government "coerced" him to plead guilty by threatening that otherwise it would file a civil suit against him and the Company to recover the alleged overcharges and seek application of the Sentencing Guidelines.  These alleged threats are accurate statements of what the prosecutor might have done if Nguyen had gone to trial.  "While confronting a defendant with the risk of more severe punishment clearly may have a `discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' -- and permissible -- `attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'"  Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 31 (1973)).

Nguyen argues that he was "forced" to plead guilty because his plea bargain was a "package plea," which also involved his friend, the Company's vice president.  "`[T]here is no constitutional right to plea bargain.' It is the prosecutor's prerogative to offer a `package deal' or no deal at all."  United States v. Gonzales, 65 F.3d 814, 823 (10th Cir. 1995) (quoting Weatherford v. Bursey, 429 U.S. 545, 561 (1977)), vacated on other grounds, 513 U.S. 132 (1997)); see also United States v. Wheat, 813 F.2d 1399, 1405 (9th Cir. 1987) (allowing the use of "package pleas"), aff'd on other grounds, 486 U.S. 153 (1988).

C.  Nguyen's final claim is that the government wrongfully withheld exculpatory

documents, in violation of <u>Brady v. Maryland</u>, 373 U.S 83 (1963), that would have established his innocence.  Those were documents the government had obtained from the Company pursuant to a search warrant.

In considering a claim that a guilty plea was involuntary because of the government's failure to disclose exculpatory material, the courts have "evaluated the validity of the challenged plea in light of all the attendant circumstances [including] the assistance of counsel, a plea taking procedure compliant with <u>Boykin v. Alabama</u>, and a factual basis for the plea."  <u>Campbell v. Marshall</u>, 769 F.2d 314, 323-4 (6th Cir. 1985), <u>cert.</u> <u>denied</u>, 475 U.S. 1048 (1986)).  <u>See e.g.</u> <u>White v. United States</u>, 858 F.2d 416, 422 (8th Cir. 1988), <u>cert.</u> <u>denied</u>, 489 U.S. 1029 (1989); <u>Fambo v. Smith</u>, 433 F. Supp. 590 (W.D.N.Y.), <u>aff'd</u>, 565 F.2d 233 (2d Cir. 1977). Under <u>White</u>, one of those attendant circumstances is the benefit the plea gave the defendant.  <u>White</u>, 858 F.2d at 424.

All the allegedly exculpatory material that Nguyen claims the government withheld came from the books and records of his own company, with which Nguyen presumably was familiar.  Moreover, Nguyen's own statements at the plea proceeding "fully establish[ed] his factual guilt." <u>Id.</u> at 422.  Nguyen narratively stated that he knew that a certain charge "was not authorized by the U.S. Department of Energy, and we billed it . . . without the DOE authorization,"  and that "I order [sic] the employee to . . . provide quality assurance and review some of our work.  And I know that it was not authorized by the U.S. Department of Energy, and I did charge that time to the contract, sir."

Considering all the circumstances, the allegedly withheld allegedly exculpatory material "did not compromise either the truth or the voluntary and knowing nature of the plea."  <u>Campbell</u>, 769 F.2d at 324.  As the district court held, there is no reason to believe that Nguyen's possession of that material would have led him to go to trial instead of pleading guilty.

## Conclusion

The order of the district court denying Nguyen's § 2255 motion to vacate his sentence is affirmed.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT